IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CION PERALTA,

    Plaintiff,           No. 2:09-cv-3228 GEB GGH P

    vs.

MICHAEL MARTEL, et al.,

    Defendants.      FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action continues on the amended complaint (Doc. 10) where plaintiff alleges that at Mule Creek State Prison (MCSP) inmates classified as "Close B" and serving life sentences are not allowed to work in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges that the named defendants have refused to obey the law requiring them to offer jobs to inmates classified as Close B and with life terms. As a result, plaintiff contends he is unable to work which would allow him to rehabilitate, pay his restitution, earn work credits and gain training to increase the chances of parole. Pending before the court are the parties' cross motions for summary judgment. Docs. 40, 41.

\\\\\

\\\\\

II. Motion for Summary Judgment

        Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

2 　　　　　On May 10, 2010, the court advised plaintiff of the requirements for opposing a
3 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
4 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
5 1988).

6 　　　　　The above advice would, however, seem to be unnecessary as the Ninth Circuit
7 has held that procedural requirements applied to ordinary litigants at summary judgment do not
8 apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the
9 district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*
10 inmates and ... avoid applying summary judgment rules strictly."  Id. at 1150.  No example or
11 further definition of "liberal" construction or "too strict" application of rules was given in Ponder
12 suggesting that any jurist would know inherently when to dispense with the wording of rules.
13 Since the application of any rule which results in adverse consequences to the pro se inmate
14 could always be construed in hindsight as not liberal enough a construction, or too strict an
15 application, it appears that only the essentials of summary judgment, i.e., declarations or
16 testimony under oath, and presentation of evidence not grossly at odds with rules of evidence,
17 need be submitted by the pro se party.

18 　　　　　Undisputed Facts

19 　　　　　The following of defendants' undisputed facts (DUF) are either not disputed by
20 plaintiff, or following the court's review of the evidence submitted, have been deemed
21 undisputed:

22 　　　　　The California Department of Corrections and Rehabilitation (CDCR) uses
23 "custody designations" to establish where an inmate will be housed and the level of staff
24 supervision to ensure safety of staff, inmates and the public.  DUF #1.  The range of designations
25 include Maximum Custody, Close Custody A or B, Medium Custody A or B and Minimum
26 Custody A or B.  DUF #4.  Plaintiff is serving a life sentence with the possibility of parole and

has a custody designation of Close B, which is the third highest custody level.  DUF #5.  Plaintiff's commitment offense involved murder with a knife.  DUF #6.

Plaintiff has been incarcerated at MCSP since February 7, 2006.  DUF #9.  At his prior institution, plaintiff was also classified as Close B.  DUF #11.  There are not enough prison jobs to accommodate all inmates at MCSP who are willing and able to work, therefore a waiting list is used.  DUF #12.  An inmate's eligibility for a particular job is determined by the Unit Classification Committee (UCC).  DUF #15.  The UCC reviews each inmate's case upon arrival at the facility and at least annually.  DUF #16.  At the UCC hearing the inmate's case factors are reviewed and the committee makes a decision as to which job waiting list the inmate should be placed.  DUF #18.  Case factors include but are not limited to age, how many prison terms the inmate has served, the commitment offense, date of commitment for the current offense, placement score, security level and enemy or gang concerns.  Id.

At plaintiff's initial UCC review upon his arrival at MCSP on February 15, 2006, plaintiff agreed with the decision to keep him at Close B custody and assigned to the Sensitive Needs Yards due to enemy concerns.  DUF #20.  On March 7, 2006, plaintiff was placed on the waiting list for a job in Office Services and Related Technology and on January 9, 2007, plaintiff was placed on the Vocational Electronics waiting list.  DUF #21.  Both of these provide vocational training.  DUF #22.  Plaintiff waived his right to appear in person at his annual UCC hearings on March 6, 2007, March 4, 2008, March 4, 2009, March 3, 2010, and March 9, 2011, though he did participate in a pre-annual interview prior to each hearing.  DUF #27.

On September 30, 2008, plaintiff was assigned a job on the Facility C Yard Crew.  DUF #34.  Plaintiff has been on A-1 status since September 30, 2008.  DUF #39.  Plaintiff was also eligible and received credits for good behavior and work time credits.  Declaration of Linda Brizzi: Exh. F, Exh. G and Exh. I.

A rule change occurred in October 2009, that because of the elimination of $280 million dollars from the CDCR programs budget certain vocational programs were limited.

5

Amended Complaint (Doc. 10) at 9-10.  Prisoners who were serving life sentences were no longer eligible for vocational programs until they were within 36 months of a parole hearing.  Id.  As plaintiff is not potentially eligible for parole until 2021, he would not be eligible for a vocational program until 2018.

### Disputed Facts

Plaintiff generally states that Close B inmates, including himself, are not hired for certain jobs, specifically those jobs operated as part of the Prison Industry Authority (PIA), nor are they provided vocational programs.  Plaintiff also states that he never stopped requesting these jobs or the vocational jobs he had been wait listed for.

### Analysis

#### Legal Standard

As an initial matter, prisoners do not have a right to a job or program opportunities in prison.  Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  Nor does a prisoner have a constitutional right to a particular classification status.  Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (quoting Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976), wherein the Supreme Court, in a footnote, explicitly rejected a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections).  Thus, in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (classification at a Level IV prison rather than at a Level III prison did not subject Myron to an atypical and significant hardship).

Nevertheless, prisoners do have a constitutional right to be free from unlawful discrimination.  With respect to plaintiff's claims, the Equal Protection Clause of the Fourteenth

Amendment may be invoked where similarly situated individuals are being intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601–02, 128 S.Ct. 2146 (2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Discussion

While the operative amended complaint in this case indicated that plaintiff and other Close B inmates had been denied the opportunity to work and therefore the benefits of work, it is now undisputed that plaintiff was provided a job and therefore work time credits and other benefits such as a stronger argument for parole. A review of the motions for summary judgments and related briefing indicates that plaintiff alleges that defendants have violated the law by not providing plaintiff certain prison jobs that he desires.[1] Plaintiff argued in his complaint that A-1 status was required to obtain credit for good behavior, work time credits and other privileges. It is undisputed that plaintiff was on A-1 status since September 30, 2008, more than a year before he filed the instant complaint.

As noted above, plaintiff has no right to a particular prison job or classification status. Moreover, plaintiff has failed to set forth a viable Equal Protection violation as plaintiff is unable to demonstrate that similarly situated individuals are being intentionally treated differently. Plaintiff's own allegations describe how all Close B inmates are being treated the same, in that they cannot obtain specific PIA jobs. Plaintiff states that differently situated inmates receive those jobs, namely inmates with different custody designations. It is undisputed that different custody designation involve different housing and different staff supervision requirements, thus these people would not be similarly situated to plaintiff. As similarly situated individuals are not being treated differently, there is no Equal Protections violation.

---

[1] In plaintiff's opposition to summary judgement (Doc. 48), plaintiff states that beginning in January 2012, defendants have now allowed Close B inmates to work in positions previously denied. Doc. 48, Plaintiff's Declaration at 1. While some of plaintiff's claims may now be moot, the undersigned will still look to the Equal Protection argument.

Even if the court were to assume that inmates in completely different custody designations were similarly situated, defendants have shown a rational relationship to a legitimate state purpose in denying plaintiff or other similar inmates certain jobs. For example, plaintiff and other Close B inmates must be directly supervised by prison staff, as part of their custody designation, therefore, a job requiring independent unsupervised activity is unavailable for these inmates. One PIA job involves working in a meat plant which requires use of knives, however, some inmates such as plaintiff who are convicted of murder using a knife may be precluded from jobs where a knife is involved. Defendants have demonstrated a rational relationship to a legitimate state purpose. To the extent plaintiff challenges defendants' decisions in deciding who can work what job based on security concerns, any such claim is meritless, as it is clear plaintiff has been provided with a job and has no right to the specific job of his choosing. This does not present a federal claim.

Plaintiff also challenges the rule change in October 2009, that because of the elimination of $280 million dollars from the CDCR programs budget certain vocational programs were limited. Amended Complaint (Doc. 10) at 9-10. Prisoners who were serving life sentences were no longer eligible for vocational programs until they were within 36 months of a parole hearing. Id. As plaintiff is not eligible for parole until 2021, he would not be eligible for a vocational program until 2018. Even if this could be construed as an Equal Protection claim, it is a legitimate state purpose for prisoners closer to parole to be given priority for access to vocational programs to prepare them for release, rather than prisoners who will not have an opportunity for parole for many years.

Plaintiff also repeatedly references a superior state court order regarding his ability to work and contends defendants have ignored the state court order, therefore he is entitled to relief from this court. Plaintiff's MSJ at 18. That court order stated that plaintiff "shall be permitted to participate in program assignments and activities during the hours of 0600 to 2000 hours in areas located within the facility security permitted including beyond t[h]e work change

area including PIA assignments." Id.  It is undisputed that plaintiff has been provided a job and the state court did not order plaintiff to be given a PIA job.  Even if the state court ordered a PIA job for plaintiff, this court could provide no relief, nor would that provide for an Equal Protection claim which is the underlying claim of this action.  For all these reasons, summary judgment should be granted for defendants.[2]

>    Accordingly, IT IS HEREBY RECOMMENDED that:

>    1. Plaintiff's motion for summary judgment (Doc. 40) be denied;

>    2. Defendants' motion for summary judgement (Doc. 41) be granted and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 3, 2012

>    /s/ Gregory G. Hollows
>    UNITED STATES MAGISTRATE JUDGE

GGH: AB
pera3228.sj

---

[2] As it is clear plaintiff has failed to present a cognizable constitutional violation, defendants remaining arguments need not be addressed.